# IN THE IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| MIA WRIGHT, TNIKA TATE, KIM WOODS, EBONY WILBOURN and JAVON HILL, | )<br>)<br>) **JURY TRIAL DEMANDED** |
| Plaintiffs, | )<br>) Case No. |
| v. | ) |
| CITY OF CHICAGO, | ) |
| UNKNOWN CHICAGO POLICE OFFICERS<br>In their individual capacities, | )<br>) |
| Defendants. | ) |

## COMPLAINT

Plaintiffs Mia Wright, Tnika Tate, Kim Woods, Ebony Wilbourn and Javon Hill (hereinafter, "Plaintiffs"), for their complaint against Defendants City of Chicago, a municipal corporation, and Unknown Chicago Police Officers, state the following:

## CAUSE OF ACTION

1. This is an action for damages, brought pursuant to 42 U.S.C. §§ 1983, 1985, 1986 and 1988, the Fourth Amendments to the United States Constitution, and under the law of the state of Illinois, against the City of Chicago and Unknown

Chicago Police Officers in their individual capacities (hereinafter, "Defendant Officers").

2. On May 31st, 2020, Defendant Officers unlawfully and without justification viciously attacked Plaintiffs, while Plaintiffs were seated in their car.

3. At some point after their vicious attack, Defendant Officers engaged in a cover up by arresting one of the Plaintiffs, Mia Wright, and charged her with a disorderly conduct; that charge has since been dismissed in the criminal court.

4. Plaintiffs allege that these constitutional violations were committed as a result of the policies and customs of the City of Chicago, Illinois.

5. As a result of the misconduct of the defendants, Plaintiffs suffered severe personal, physical, and emotional injuries.

## JURISDICTION AND VENUE

6. This Court has original jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343 over Plaintiff's cause of action arising under the Constitution of the United States; 42 U.S.C. § 1983 and § 1988 (the Civil Rights Act of 1871); and the laws of the State of Illinois, to redress deprivations of the civil rights of the Plaintiffs, accomplished by acts and/or omissions of the Defendants and committed under color of state law.

7. This Court has supplemental jurisdiction over Plaintiff's causes of action arising under the Illinois state law pursuant to 28 U.S.C. § 1367.

8. Venue is proper in this district pursuant to 28 U.S.C. § 1391, in that all of the claims and events giving rise to this action occurred in this district.

## PARTIES

9. The Plaintiffs, Mia Wright, Tnika Tate, Kim Woods, Ebony Wilbourn and Javon Hill, are all United States citizens and residents of the State of Illinois, County of Cook.

10. At all relevant times herein referenced, Defendant Officers were employed by the City of Chicago as sworn police officers. They are being sued in their individual capacities. At the time of the incident in this Complaint, Defendant Officers were engaged in the conduct complained of while acting within the scope of their employment and under color of state law.

11. At all relevant times herein, Defendant, City of Chicago, was and is a municipal corporation duly incorporated under the laws of the State of Illinois and is the employer of all Defendants.

## BACKGROUND

12. On May 31, 2020, the Plaintiffs drove to the Brickyard Mall located at 2600 N. Narragansett Ave., Chicago, Illinois 60639. The Plaintiffs were as follows: Mia Wright, an assistant funeral home director and who had just started training to become a paramedic; Tnika Tate who at the time was a funeral director and a qualified mortician; Kim Woods, a principal assistant at Chicago Public Schools; Ebony Wilbourn, who worked as a mail extractor at J.P. Morgan Chase and; Javon Hill, an 18 year old The Plaintiffs are all relatives and family friends and had gone to the Brickyard Mall to get items for a birthday party they were planning for one of the Plaintiffs: Kim Woods.

13. Unbeknownst to the Plaintiffs, there was suspected looting, protesting and heavy police presence in and around the Brickyard Mall.

14. Upon arrival and entry into the Brickyard Mall, the Plaintiffs immediately observed a crowd of people along with heavy police presence.

15. As a result, the Plaintiffs decided to leave the Brickyard Mall. In order to exit the Brickyard Mall, the Plaintiffs followed a convoy of cars that were slowly exiting the Brickyard Mall under the direction of some Chicago Police Officers who appeared to be directing the flow of traffic exiting the Brickyard Mall.

16. At no time ever were the Plaintiffs engaged in any criminal activity while at the Brickyard Mall. Nor, were the Plaintiffs obstructing or threatening any of the Chicago Police Officers at the Brickyard Mall.

17. The Plaintiffs did not engage in any conduct that warranted any use of force, especially excessive force by members of the Chicago Police Department.

### VIDEO FOOTAGE CAPTURING ATTACK OF PLAINTIFFS

18. About two car lengths behind the Plaintiffs and within the same convoy of cars exiting the Brickyard Mall, James Smith a friend of one of the Plaintiffs, had started video recording the crowd and heavy police presence with his smart phone and from the passenger seat of his own car.

19. Within a few seconds of the video recording, the footage captures two Chicago Officers huddled together and talking. A few seconds later, the video footage captures the same police officers walking slowly towards the Plaintiffs' car.

20. At some point, and unprovoked, the Defendant Officers begin to run towards the Plaintiffs' vehicle.

21. Within a few seconds of running, the Defendant Officers arrived at the Plaintiffs' car and immediately, without provocation or justification, began smashing the Plaintiffs' car windows with their batons while yelling various profanities at the Plaintiffs in the car.

22. Within a few seconds of the initial attack, the Plaintiffs' car was swarmed by Chicago police officers who were all smashing and damaging the Plaintiffs' car with their batons while yelling various profanities at the Plaintiffs in the car.

23. During the ensuing vicious attack on Plaintiffs, video footage captures various Chicago police officers pointing their guns at the Plaintiffs in the car. Other unknown Chicago police officers were captured standing by and seemingly standing watch during this vicious attack of the Plaintiffs.

24. In fact, as multiple Chicago police officers took turns yelling profanities at the Plaintiffs and smashing the Plaintiffs' windows, a piece of glass from the window hit Mia Wright's right eye.

25. But the brutality did not stop there.

26. Video footage captures the unknown Chicago police officers violently grabbing, dragging, and pulling all occupants out of the car.

27. Video footage captures an unknown Chicago police officer dragging Mia Wright out of the car and onto the ground by her braided hair for at least a few feet while other officers hurled profanities at her.

28. After being dragged to the ground and while stationary on the ground with her hands spread out, another unknown Chicago officer came on top of Ms. Wright and is captured on video pressing his knee and the weight of his body on the back of her neck. During this attack, Mia Wright could not breathe and was in paralyzing fear as her face and neck were smashed against the concrete ground.

29. The Plaintiffs were never a threat to the Chicago police officers at any point or phase of the vicious attack. Additionally, the unknown Chicago police officers lacked probable cause or a reasonable articulable suspicion to arrest, detain or even approach the Plaintiffs' car.

30. The video footage of the attack on Plaintiffs demonstrates that Chicago police officers orchestrated and executed a vicious ambush on the Plaintiffs, designed to instill maximum fear and trauma and with the intended goal of causing chaos and mayhem.

## THE AFTERMATH OF THE VICIOUS ATTACK

31. The Plaintiffs were all detained and, except for Mia Wright, were all released without being charged or given an explanation or an apology.

32. The Chicago police officers charged Mia Wright with disorderly conduct only after she informed the police officers that she needed medical attention due to discomfort in her right eye and extreme pain in her neck.

33. Plaintiff Mia Wright was subjected to more verbal abuse upon arrival at the Chicago police department. For instance, at the Chicago police department, a processing sergeant told Mia Wright that she was a "savage b****."

34. On September 28, 2020, the disorderly conduct charges against Plaintiff Mia Wright were dismissed in a Cook County Court.

35. All Plaintiffs have endured and continue to endure lasting physical and emotional injuries related to the vicious attack they endured. For example, all Plaintiffs have been diagnosed with various and serious forms of emotional injuries ranging from severe Post Traumatic Stress Disorder (PTSD) to Conversion Disorder.

36. As a result of the vicious attack, Plaintiff Mia Wright is now blind in her right eye; the impact of which has caused a devastating blow to her aspirations of becoming a paramedic.

**CHICAGO POLICE TACTIC OF BRUTLITY IN THE SUMMER OF 2020**

37. The brutality the Plaintiffs faced at the hands of Chicago police officers was by no means in isolation.

38. After May 25, 2020, peaceful protests and rallies were held around the United States and including Chicago, to protest the killing of George Floyd, a black man who was unjustly killed by Minneapolis Police officers.

39. It has been well documented in various public domain video footage, reports, and news articles, various instances of coordinated brutal and vicious attacks on protesters, innocent bystanders and passersby by the Chicago Police Department and its officers.

40. In fact, on August 19 and 20, 2020, a federal district court in the Northern District and under case number: 1:17-cv-06260, held a listening session during which numerous members of the public complained of police brutality during this protest period in Chicago.

41. The summer months of 2020 demonstrate clearly that Chicago police had an implied or explicit custom and practice to use unjustified excessive force at large gatherings during the protest months that lasted from May through August of 2020.

42. As a direct and proximate result of the willful, wanton, and malicious actions of the Defendant Officers, the Plaintiffs suffered the following injuries and damages:

> a. Violation of their constitutional rights under the Fourth Amendments to the United Sates Constitution;
>
> b. Loss of their physical liberty;
>
> c. Psychological abuse, mental coercion, physical injury and pain; and
>
> d. Mental and emotional trauma.

43. At all relevant times, all Defendant Officers were acting under color of state law and under color of authority as police officers, employees, and agents or servants of the City of Chicago, Illinois.

## COUNT 1
### 42 U.S.C. §1983—Unlawful stop/ False Arrest and Excessive Force, all in violation of the Fourth Amendment
### (Against Defendant Officers)

44. Each paragraph of this Complaint is incorporated as if restated fully herein.

45. At the time of the complained of events, Plaintiffs had a clearly established constitutional right under the Fourth Amendment to be secure in their persons from unreasonable seizure through excessive force, false arrest or an unlawful stop.

46. Any reasonable police officer knew or should have known of these rights at the time of the complained of conduct as they were clearly established at that time.

47. Defendant Officers actions and use of force as described herein, were objectively unreasonable in light of the facts and circumstances confronting them and were taken intentionally and with willful indifference to the constitutional rights of the Plaintiff.

48. Defendants Officers actions and use of force, as described herein, were intended to cause harm unrelated to any legitimate object of arrest or seizure.

49. Defendant Officers' actions of stopping Plaintiffs' car without probable cause or reasonable articulable suspicion, or seizing the Plaintiffs by smashing the windows of Plaintiffs' car, pointing their guns at Plaintiffs, swearing and cursing at Plaintiffs, violently grabbing and dragging Plaintiffs out of the Plaintiffs' car as well as using physical force on Plaintiffs, all constituted an unreasonable stop and seizure

9

lacking in probable cause and thereby unreasonably restraining the Plaintiffs of their freedoms.

50. As a direct and proximate consequence of said conduct of Defendants Officers, Plaintiffs suffered violations of their constitutional rights, personal and physical injuries, monetary expenses, fear, emotional distress, and other injuries.

## COUNT II
## 42 U.S.C. §1985—Conspiracy to violate the Plaintiff's Fourth Amendment Right
## (Against Defendant Officers)

51. Each paragraph of this Complaint is incorporated as if restated fully herein.

52. Upon information and belief, some of the Defendant Officers conspired to deprive the Plaintiffs of their constitutionally protected right to be free from unreasonable searches, seizures and excessive force in violation of the Fourth Amendment.

53. In planning and executing the violent and unreasonable apprehension of the Plaintiffs, some of the Defendant Officers acted in furtherance of that conspiracy and violated the Plaintiff's constitutional rights contrary to § 1985.

54. For instance, some of the Unknown Defendant Officers charged Mia Wright, one of the Plaintiffs, in an attempt to cover up and justify the Defendant Officers violent and vicious attacks on the Plaintiffs.

55. As a direct and proximate consequence of said conduct of the Unknown Defendant Officers, the Plaintiffs suffered violations of their constitutional rights,

personal and physical injuries, monetary expenses, fear, emotional distress, and other injuries.

## COUNT III
### 42 U.S.C. §1986—Failure to Intervene
### (Against Defendants Officers).

56. Each paragraph of this Complaint is incorporated as if restated fully herein.

57. Other Unknown Defendant Officers had an affirmative duty to prevent the conspiracy as stated in Count II of this complaint, and its furtherance against the Plaintiffs under 42 U.S.C. § 1986.

58. Upon information and belief, some of the as-yet-Unknown Chicago Police Officers stood by and stood watch as other Unknown Chicago Police Officers attacked and deprived the Plaintiffs of their constitutionally protected right to be free from unreasonable searches, seizures and excessive force in violation of the Fourth Amendment.

59. That these Unknown Chicago Police Officers had a reasonable opportunity to prevent this harm to Plaintiffs but failed to do so.

60. As a result of the Defendant Officers' failure to intervene to prevent the violation of Plaintiffs' constitutional rights, Plaintiffs suffered pain and injury, as well as severe emotional distress.

61. The misconduct described in this Count was objectively unreasonable and was undertaken intentionally with willful indifference to Plaintiff's constitutional rights.

62. The above acts and omissions of the Defendant Officers violated the Plaintiffs' rights as described in this Count.

63. As a direct and proximate consequence of said conduct of Defendant Officers, the Plaintiffs suffered violations of their constitutional rights, personal and physical injuries, monetary expenses, fear, emotional distress, and other injuries.

### COUNT IV
### 42 U.S.C. §1986—Monell Claims
### (Against City of Chicago).

64. Each of the Paragraphs of this Complaint is incorporated as if restated fully herein.

65. In the aftermath of the late George Floyd's fatal excessive force arrest in Minneapolis, Minnesota, the City of Chicago experienced widespread protests that started after May 25, 2020 and lasted into August of 2020. Protesters were protesting the death of George Floyd and the widespread police brutality wielded against black people across the United States.

66. Amid the widespread protests, the Chicago police engaged in widespread use of force as crowd control and against protesters, suspected looters, and innocent individuals who happened to be in any vicinity where there was a large police presence.

67. For instance, and as stated earlier, during a listening session pertaining to the consent decree and Chicago's mandatory police reform efforts, a federal Judge heard from numerous victims of Chicago police brutality during the Black Lives Matter and George Floyd killing protests.

68. The incidents described in the preceding paragraph demonstrate that it was the express or implied policy and/or custom of the City of Chicago to use extraordinary and unjustified excessive force in any area in which there needed to be crowd control during the Black Lives Matter and George Floyd protests.

69. The incidents described in the preceding paragraph also demonstrate that the police were instructed to use heavy-handed tactics to disburse protests, crowds and maintain order and control, regardless of citizens' constitutional rights. Additionally, Chicago police officers knew that they would not face discipline for abusing or disregarding the constitutional rights of Citizens.

70. The above described polices and customs demonstrate a deliberate indifference on the part of the City of Chicago, to the constitutional rights of persons within Cook County and were the cause of the violations of the Plaintiffs' rights alleged herein.

## COUNT V
### State Law Claim—Intentional Infliction of Emotional Distress
### (Against Defendant Officers & City of Chicago)

71. Each of the Paragraphs of this Complaint is incorporated as if restated fully herein.

72. The acts and conduct of the Defendant Officers as set forth above were extreme and outrageous. The Defendant Officers intended to cause or were in reckless disregard of the probability that their conduct would cause, severe emotional distress to the Plaintiffs, as is more fully alleged above.

73. Said actions and conduct did directly and proximately cause severe emotional distress to the Plaintiffs, and thereby constituted intentional infliction of emotional distress.

74. The misconduct described in this Count was undertaken with malice, willfulness, and reckless indifference to the rights of the Plaintiffs.

75. In committing the acts alleged in the preceding paragraphs, each of the Defendant Officers were members of, and agents of, the Chicago Police Department acting at all relevant times within the scope of employment and under color of law.

76. Defendant City of Chicago is liable as principal for all torts committed by its agents including the Chicago police Department.

77. In consequence thereof, Defendant City of Chicago is liable to Plaintiffs under Illinois law, pursuant to the doctrine of *respondeat superior*.

78. As a proximate result of Defendants' wrongful acts, Plaintiffs suffered damages, including severe emotional distress and anguish, as is more fully alleged above.

### COUNT VI
### State Law Claim—Battery
### (Against Defendant Officers & City of Chicago)

79. Each of the Paragraphs of this Complaint is incorporated as if restated fully herein.

80. The actions of the unknown Defendant Officers in ambushing and attacking the Plaintiffs and as described in the preceding paragraphs, were

14

undertaken intentionally, without the consent and against the will of the Plaintiffs and resulted in harmful and/ or offensive contact with the bodies of the Plaintiffs.

81. The actions of the unknown Defendant Officers constituted battery against the Plaintiffs under Illinois law and were undertaken without legal justification.

82. In committing the acts alleged in the preceding paragraphs, each of the Defendant Officers were members of, and agents of, the Chicago Police Department acting at all relevant times within the scope of employment and under color of law.

83. Defendant City of Chicago is liable as principal for all torts committed by its agents including the Chicago police Department.

84. In consequence thereof, Defendant City of Chicago is liable to Plaintiffs under Illinois law, pursuant to the doctrine of *respondeat superior*.

85. As a proximate result of Defendants' wrongful acts, Plaintiffs suffered damages, including severe emotional distress and anguish, as is more fully alleged above.

## COUNT VII
### State Law Claim—Assault
### (Against Defendant Officers & City of Chicago)

86. Each of the Paragraphs of this Complaint is incorporated as if restated fully herein.

87. The actions of the unknown Defendant Officers in ambushing the Plaintiffs as described in the preceding paragraphs, pointing their guns at Plaintiffs, and smashing the windows of Plaintiffs' car while Plaintiffs were in the car, placed

the Plaintiffs in reasonable apprehension of receiving imminent physical harm or contact.

88. The actions of the unknown Defendant Officers constituted assault against the Plaintiffs under Illinois law and were undertaken without legal justification.

89. In committing the acts alleged in the preceding paragraphs, each of the Defendant Officers were members of, and agents of, the Chicago Police Department acting at all relevant times within the scope of employment and under color of law.

90. Defendant City of Chicago is liable as principal for all torts committed by its agents including the Chicago police Department.

91. In consequence thereof, and as it pertains to Count IV, Defendant City of Chicago is liable to Plaintiffs under Illinois law, pursuant to the doctrine of *respondeat superior*.

92. As a proximate result of Defendants' wrongful acts, Plaintiffs suffered damages, including severe emotional distress and anguish, as is more fully alleged above.

## COUNT VIII
### State Law Claim—False Imprisonment
**(Against Defendant Officers & City of Chicago)**

93. Each of the Paragraphs of this Complaint is incorporated as if restated fully herein.

94. The actions of the unknown Defendant Officers in ambushing the Plaintiffs as described in the preceding paragraphs, pointing their guns at Plaintiffs,

smashing the windows of Plaintiffs' car while Plaintiffs were in the car and forcefully arresting the Plaintiffs, caused a restraint of the Plaintiff without reasonable grounds to believe that the Plaintiffs were committing an offense.

95. The actions of the unknown Defendant Officers constituted false arrest against the Plaintiffs under Illinois law and were undertaken without probable cause.

96. In committing the acts alleged in the preceding paragraphs, each of the Defendant Officers were members of, and agents of, the Chicago Police Department acting at all relevant times within the scope of employment and under color of law.

97. Defendant City of Chicago is liable as principal for all torts committed by its agents including the Chicago police Department.

98. In consequence thereof, Defendant City of Chicago is liable to Plaintiffs under Illinois law, pursuant to the doctrine of *respondeat superior*.

99. As a proximate result of Defendants' wrongful acts, Plaintiffs suffered damages, including severe emotional distress and anguish, as is more fully alleged above.

## COUNT IX
### Indemnification Pursuant to 745 ILCS 10/9-102
### (Against the City of Chicago)

100. Each paragraph of this Complaint is incorporated as if restated fully herein.

101. The misconduct of all Defendants were committed in the scope of their employment with the Defendant City of Chicago.

102. Pursuant to the Illinois Tort Immunity Act, 745 ILCS 10/9-402, Defendant City of Chicago is liable for any judgments for compensatory damages in this case arising from the actions of all Defendants.

## PRAYER FOR RELIEF

WHEREFORE, the Plaintiffs demand the following relief, jointly and severally, against all the Defendants:

A. Compensatory damages with respect to all counts.

B. Punitive damages with respect to all Defendant Officers in their individual capacities.

C. Attorney's fees pursuant to 42 U.S.C. § 1988. Award Plaintiff's counsel reasonable attorney's fees and costs pursuant to 42 U.S.C. § 1988 and any other applicable provisions of law.

D. Such other and further relief as this Court may deem appropriate under the circumstances.

## JURY TRIAL DEMAND

Plaintiff demands a jury trial, pursuant to the Seventh Amendment to the Constitution of the United States, as to all claims for damages.

Respectfully submitted,

/s/ Nenye E. Uche

Nenye E. Uche
UCHE P.C.
314 N. Loomis St.,

Suite G2
Chicago, IL 60607
Tel: (312) 380-5341
Fax: (773) 525-0751
Attorney No: 6294606
Email: nenye.uche@uchelitigation.com